Opinion of the Court, by
Ch. J. Boyle.
George Montjoy, Thomas Rule and John Metcalfe exhibited their bill in chancery, in the Bourbon circuit court, in substance, alleging that John Coburn, being possessed of a tract of 500 acres of land in Bourbon county, sold and conveyed sixty odd acres of it to David Brown; that the sixty odd acres conveyed to Brown were sold by the sheriff, under an execution against Brown, to John Rule, who sold it to William Morrow, who sold it to the complainants, and they to Charles Yelton, and made themselves responsible for the purchase money, if the land was lost; that Tho’s. Hart, having a claim to the tract of 500 acres, on account of his being the proprietor of the warrant in virtue of which the title was acquired, commenced a suit in chancery, and obtained a decree against Coburn for the same, in the general court; that after the decree in the general court, Yelton, and Henry Clay, as the attorney and agent of Hart, represented to the complainants that the sixty odd acres were lost by that decree, and believing the fact to be so, they were induced to give their bond to Yelton for the amount for which they were responsible to him, for the purpose of being passed to Hart; that it was accordingly assigned to Hart, and that they afterwards confessed judgment on it; but they state that they have since discovered that the sixty odd acres were conveyed by Coburn to Brown, before the suit was commenced by Hart against Coburn, and that, as Brown was no party to that suit, his title cannot be affected by the decree against Coburn. The complainants made Hart’s executor, Yelton, Coburn, John Rule and Morrow, defendants, and prayed for and obtained an injunction to the judgment at law.
The complainants filed an amendatory bill, suggesting the death of Montjoy, and reviving the suit in the name of his administrator, and repeat, in substance, the same charges as are contained in the original bill, and allege that Brown was an innocent purchaser for a fair and valuable consideration fully paid.
*355 They subsequently filed a further amendment to their bill, stating the death of Yelton, and with the consent of his heirs and administrators, making them co-complainants, who thereupon united with the original complainants in all the matters alleged; and they, moreover, state that the sheriff neglected to make the deed on the sale under the execution against Brown, to John Rule; that the deed is now made, to which they refer; that the original complainants gave to Yelton their bond to refund the purchase money, if the sixty odd acres were lost, and Morrow, his bond for a title; that after all these transactions the decree of Hart against Coburn was obtained; that Yelton, being alarmed at the apprehended loss of his land, on which he lived, applied to the complainants to refund, and to Clay, acting for Hart, to purchase; that Clay agreed to sell, at the price of seven dollars per acre, and gave his obligation, binding himself and Hart to convey the sixty odd acres, as soon as they obtained a title from Coburn, with condition, if the land should be lost, the sum of seven dollars per acre shall be refunded, without interest; that, for the purpose of paying Clay for the land, it was agreed that the original complainants should execute their note to Yelton, for so much as they were bound to refund to him, which note was to be passed, and was passed to Hart, and that the residue of the price was to be paid by Yelton, which the complainants allege has been paid, and refer, for proof of the fact, to a letter of Hart, which they exhibit. The complainants further state, that upon application to Coburn, he undeceived them, informing them that before Hart commenced his suit for the land, he had conveyed to Brown, and was not bound to refund. They also allege the death of John Rule, and make his heirs defendants, and suggest the death of Hart, Clay’s co-executor, and pray for a perpetual injunction, that the contracts may be rescinded, and that Clay, as executor of Hart, may be decreeed to repay to Yelton’s administrator what he had advanced.
Clay, in his answer, denies the misrepresentations imputed to him, or that he made any representations; alleges that the claim of Coburn was derived from a forgery of an assignment of Hart’s warrant, made by L. Thompson; that he is ignorant of the existence of the deed from Coburn to Brown, and the sheriff’s and other *356 sales subsequent thereto. He admits the sale to Yelton, and the execution of the obligation to convey upon the terms stated; but states that he sold at a less price than the intrinsic value of the land, to quiet all difficulties; and he puts the complainants upon the proof of all matters not admitted.
It was agreed that this answer should stand as an answer to all the bills, and that any part of them not responded to, should be considered as denied. Clay, however, subsequently, without waiving that arrangement, filed an additional answer, explaining the letter of Hart to Yelton, referred to in the last amendatory bill, and denying that it was any proof of payment on the part of Yelton.
On a final hearing, the circuit court rescinded the contract between Yelton and Clay, decreed the injunction perpetual, and that Clay, as executor of Hart, should pay to Yelton’s representatives $156 75, the difference between the bond of the original complainants and the price of the sixty odd acres of land, at seven dollars per acre. To that decree Clay, as executor of Hart, has prosecuted this writ of error.
The deed from Coburn to Brown bears date several years before the commencement of the suit by Hart against Coburn, and was acknowledged by Coburn on the day of its date, in the clerk’s office of the district court held at Paris. It is obvious, therefore, that Brown was not a purchaser pendente lite, and that the decree obtained by Hart against Coburn could not reach the title in the hands of Brown. Consequently, if the land sold by Clay to Yelton were the same that was conveyed by Coburn to Brown, there would be a manifest inability on the part of Hart to comply with the contract made by Clay; and the contract, on that ground, might well be set aside, whether the sale by the sheriff, and the sales subsequent thereto, were sufficient to pass the title to the complainants or not. But, unfortunately for the complainants, they have wholly failed to prove that the land sold by Clay to Yelton is the same that was conveyed by Coburn to Brown. There is nothing in the description contained in the contract between Clay and Yelton, or in that contained in the deed from Coburn to Brown, which can identify the land; nor is there any other matter in the record, whereby it can be identified. It does not even appear that the land *357 conveyed by Coburn to Brown is any part of the tract for which Hart obtained a decree against Coburn. It is very possible, that the necessity of identifying the land did not occur to the complainants, merely because the fact was in itself indisputable. But, however indisputable the fact may be in itself, we cannot know it, unless it were made to appear from the record, and the record affords no means by which the land sold by Clay, and that conveyed by Coburn to Brown, can be identified. The fact is not, indeed, expressly denied by Clay; but it is not admitted, and it was agreed that every allegation not admitted, should be taken as denied. Without proof, therefore, of the fact, it is impossible that we could be justified in predicating a decree upon its existence.
The decree must be reversed with costs, and the cause remanded, that the injunction may be dissolved and the bill be dismissed with costs and damages.